The Judges delivered their opinions.*
Judge Green.
This case presents the question, what is the measure of compensation in the case of a warranty of a freehold estate, and an eviction of the warrantee ? This, as far as I am informed, is the first instance in which that question, in an action of covenant, has been presented to the Supreme Judicial Tribunal in Virginia, for adjudication. It is a question of great importance, and entitled to a most careful consideration. Although it has never been the subject of direct adjudication, yet, in several cases,
Judges, whose opinions are entitled to great weight, have incidentally given their opinions upon it. The first of these cases, is that of Mills v. Bell, 3 Call, 322. In that case, by a contract between Bell and Mills, in February, 1778, the former agreed to sell to the latter, two tracts of land, which he agreed should contain 300 acres, and for which he was to make Mills a sufficient title the next November. Mills was to pay for the land, £ 500; one hundred down, sixty *136 pounds the next November, and sixty pounds every year following, until the whole was paid. The £ 100 was paid down, and £60 the next November, and £ 60 in Novem^er’ *779; after which, nothing more was paid, nor was any conveyance made. Bell had purchased these two tracts of land of different persons. For one of 90 acres, he had procured a title; for the other of 210 acres, he had not procured a title, and the vendor, in an action of ejectment, evicted Mills, after the before-mentioned payments were made; how long, does not appear. The defect of the title was known to the parties in 1781; but how long before, does not appear. The payments, which were punctually made, exceeded the price of the 90 acres; and Mills sued Bell in Chancery, for a title to the 90 acres, and compensation for the loss of the 210 acres. The opinion of the Court was delivered by Pendleton, President. After ascertaining that Mills was entitled to compensation for the loss of the 210 acres of land, the opinion proceeds: “ The first point which presents itself to the consideration of the Court, is, by what ratio the compensation to be made to Mills, for the land evicted, is to be ascertained ? Whether the value of them, at the time of eviction, or at the time the purchase was made ? The former would be the rule, if a conveyance had been made with warranty; since the purchaser is entitled, on the covenant, to the increased Value of the estate, as well as for any improvements he may have made on it. But when, as in this case, the contract is executory, a Court of Equity will adjust it upon principles of equity, according to the circumstances. And, since Mills appears to have been faulty in his payments, which, if regularly made, might have prevented the loss, it ought to be adjusted by proportioning the loss to the value of the whole purchase money for the whole land.’.’ The Court proceeded to decree, that u the compensation should be adjusted according to the value of the land at the time of the agreement, of which there was no evidence, except the consideration agreed to be paidwhich *137 was adopted, and Bell decreed to convey the 90 acres, and re-pay the money received beyond the price of that part of the land. There was evidence in the cause that the value of the land had, between the time of the agreement and the hearing of the cause, increased more than six fold.
The next case, in which this question appears to be alluded to, is that of Nelson v. Matthews, 2 Hen. & Munf. 177. There, the purchaser got the very land contracted for, and was not evicted from any part. But, there was a deficiency in quantity, for which he claimed a discount from the purchase money. He was relieved to the extent of the deficiency, according to the average value of the land, at the time of the sale, as ascertained by the report of commissioners. A part of the land had been conveyed by the vendor, with general warranty; the residue by another, from whom Matthews had purchased; but whether with warranty or not, does not appear. Judge Tucker, in delivering his opinion, in this case, says: “ If, indeed, there had been the full quantity of land in each tract, and Nelson had been evicted of a part by a title superior to that of Matthews, the proper estimate of his damages would have been according to the actual value of the land recovered; for, then it might have been precisely known.” And, again: “ Whereas, if the money had been paid, and the purchaser had been evicted by a superior title, I should have thought the value ought to have been fixed, as it might have been, at the time of eviction.”
This subject was again adverted to, in Humphreys v M’Clanachan, 1 Munf. 493. In that case, M’Clanachan sold to Humphreys, two land warrants, which had been located; to a part of which, another had a title, not known to the vendor. The purchaser filed his bill, claiming a deduction from the purchase money on that account, which was allowed according to the value ascertained by the price given; the real value not appearing to be different from that agreed upon. Judge Tucker, there remarks: “ the point most strongly contested in this Court, *138 was, whether Humphreys was entitled to compensation for deficiency (the equitable title to which was, at the time of the contract, in Rhodes,) according to the average Pri°e tb® whole, or, according to the specific value of the land, when Rhodes acquired his legal title thereto. The price of lands must, in all cases, between the purchaser and seller, be considered as the just value thereof, at the time of the contract, &c.” “If the contract be executory on both sides, the party who hath not yet fulfilled his own engagements, comes with an ill grace before a Court of Equity, to demand ample compensation, or more properly speaking, vindictive damages, against the other party for any deficiency or failure on his part.’5 And, Judge Roane referred to the rule laid down in Mills v. Bell, in the case of a general warranty and eviction, for the purpose of shewing, that the case of Nelson v. Matthews did not conflict with that rule, and with seeming approbation.
It may be remarked, that the rule thus stated to exist, has no sort of influence in the decision of those cases; and of course, that question was not, in any of those cases, necessarily considered, and probably not considered at all, but taken for granted. Yet, it might be supposed that those Judges, particularly Mr. Pendleton, who was familiar with the practice of the General Court, long before the Revolution, spoke from their knowledge of some settled practice in the old General Court, upon that subject. Such a rule could only have grown up in actions of covenant upon real warranties, certainly not in actions of warrantia chartse, or voucher, since the law as to those remedies was clearly and uniformly settled to be otherwise. At the time, however, when this dictum was thrown out in the case of Mills v. Bell, it could not be known to any of the Judges, that any action of covenant, on a real warranty, had ever been brought in the old General Court. For, in the case of Daniels v. Cook, 1 Wash. 306, in 1794, (which was an action of covenant, upon a warranty by *139 deed for a negro, made in 1770, brought against the fexecutor of the warrantor, and, at the time of the warranty, slaves were, to some purposes, real property,) it was contended, that the warranty was real, and descended upon the heir of the warrantor, and no action would lie against his executor. The Court declared, that, as to the subject under consideration, slaves were personal estate; and Pendleton, President, in delivering the opinion of the Court, said: “ without enquiring, whether an executor is bound by such a covenant in a conveyance of real estate, in which he is not named, (which the Court forbear, it being hinted at the bar that there is another ease in Court, where that is to be a question,) it is admitted, and clear, that, in personal contracts, if the testator be bound, the executor is also bound, though not named.” If, at this time, actions of covenant, or real warranties, had been familiar, or if, in any one case, such an action had been maintained, it would have excited great attention, and the Court would probably not have forborne that question; for, in all cases where an action of covenant will lie against the testator, it would lie, of course, against his executor.
The Judges who have announced the rule, that, upon a warranty, the measure of damages is the value at the time of the eviction, seem to have considered, without examination, that a harsh rule of that sort existed at law, to be moderated according to reason and justice, whensoever a, Court of Equity could reach the case. Indeed, Judge Tucker, in Humphreys v. M’Clanachan, whilst he admits the rule, as he had stated it to be in Nelson v. Matthews, expressly declares, that such damages are vindictive. Accordingly, in every case in this Court, in which the purchaser, whether he had a deed with warranty, or not, has claimed a compensation for lands lost by eviction, or for a deficiency in quantity, he has been compensated according to the value at the time of the contract; and the Court, under the conviction that justice, in no case, required a greater compensation, has, to avoid the force of the *140 supposed rule of law, seized upon circumstances, which otherwise would be entitled to no weight. As in the case of Mills v. Bell, the Court affirm, that the purchaser was ^au^y in his payments; and profess to found their judg.ment on that circumstance, when in fact he had punctually paid more than he could have been compelled to pay, either at law or in equity, and the excess was refunded to him. He did not stipulate, nor was he bound by any principle of equity to pay, the subsequent instalments, to enable the vendor to complete the title. The vendor was bound by his contract to make him a perfect title, before the instalments, which he refused or failed to pay, became due; and if, without making such title, he could have obtained judgments at law for the subsequent instalments, a Court of Equity, according to the settled course of this Court, would have restrained him from enforcing the payment, until the title was made according to the contract. The loss to the purchaser by the eviction, was precisely the same, in consequence of the failure to make a good title, according to his covenant, as it would have been if he had made a deed with warranty; and the'circumstance that the contract was executory, was a reason why the increased value should have been given in that case, rather than in a case of warranty made by one, bona fide believing that he had a perfect title; for, in the latter case, the estate may be lost, without the default of the warrantor; but, in that case, the vendor was in default, in not paying the purchase money to the person pf whom he purchased, by which he would have been enabled to secure the title. And, in all cases of executory contracts, the compensation, in case of failure, when the property sold has in the mean time increased in value, should be the same as in case of an executed contract, with warranty, and an eviction; for, the real loss to the purchaser is the same, unless he has made improvements at his own expense, a circumstance which will be hereafter considered. And so in the many cases in this Court, besides those which have been *141 cited, in which the Court has given a compensation for a deficiency, according to the price given, or the value at the lime of the purchase, it seems to me, that the loss by delicieney (if the lands had increased in value,) was precisely the same as it would have been, if the whole quantity of laud had been conveyed, and the purchaser had been evicted from so much as the deficiency amounted to, by title paramount; his loss being, in both cases, of so much of his purchase money, and of a good bargain.
If I had not been informed by one of the Judges who sat in the case, that Crenshaw v. Smith, 5 Munf. 415, was wrongly reported, I should have considered that case as entitled to weight, as an authority in point, to shew, that upon a warranty and eviction, the value at the time of the purchase was the measure of compensation. It is, however, at all events, another case to shew, that when the question of compensation is referred to a Court of Equity, that rule will be adopted. The land, for which compensation was there sought, was sold; it had increased, and was increasing in value, at the time of eviction, and the value at the time of the sale was allowed.
If there be no such rule at law as alledged in Mills v. Bell, and we were now at liberty to adopt a rule according to the very right of the case, it cannot be doubted, that the rule ought to be the same, both at law and in equity. There is no such rule at law, established by authoritative decisions in point. No such compensation is known to have been given at any lime in Virginia, with the sanction of the Supreme Judicial Tribunal; nor in England, in any case. Indeed, there is no case in England, where any personal remedy has been allowed upon a mere real warranty. The declaration of Chief Justice Parsons, of Massachusetts, that an action of covenant would lie in such case, for which he cites two cases from Brownloio’s Reports, seems to, be a mistake; for, in both those cases, the actions were founded on express covenants to save the lessee harmless, &c. Nor do I perceive any thing in those *142 cases, which can justify such an inference. On the coin’ frary, the common law and all its analogies forbid the re- . covery, in such case, of more than the value of the land the time of making the warranty.
To ascertain this, we must enquire, what was the real import, at common law, of a contract to warrant upon a conveyance of a freehold estate; the measure and mode of compensation, when the warrantor failed in the performance of his contract, and the reasons upon which such measure was adopted. Warrant was a technical term, having its own peculiar signification, and without the use of which, the contract, imported by that term, could not he created, unless in cases in which the law implied the contract. Co. Litt. 384, a. The import of the word, when applied to freehold estates, was “that the warrantor would, upon voucher, or by judgment in a writ of warrantia chartse,- yield other lands and tenements to the value of those that shall be evicted by a former title.” Ibid. 365, a, and 366, a. The contract to warrant had the same effect in all respects, as if the party had contracted in the terms of this definition, if such a contract were allowed, and the specific execution of it could be enforced. Co. Litt. 366, a; Ibid. 389, a. Such a contract was not permitted in relation to any interest, other than freehold, because no other interest could be claimed in a real action; and voucher lay in none but real actions, except in cases of wardship. Co. Litt. 101, b. The writ of warrantia chartse also lay only for a tenant of the freehold, and was only used when voucher did not lie, because the tenant was not impleáded, or because he was impleaded in an action in which -it was the policy of the law to prohibit delay, and therefore forbid the voucher; and it lay in such cases, only because the voucher did not lie. Vin. Abr. tit. Warr. Char. D. It was then supplementary to, and in lieu of, voucher. If the word warrant was applied to chattel interests or personal property, it operated as a personal covenant for the title, not because such was its strict technical mean *143 ing, but because, although improperly used, (as it could not have its technical eifect, and the parties intended that it should have some effect,) it must have that of a personal covenant, or none. This recovery in value, could only be had upon voucher or warrantia charts, its substitute, and only in lands or tenements; and if the warrantor had no lands or tenements at the time of his entering into warranty, (that is, appearing on the voucher, and taking upon himself to warrant by defending the suit,) or, at the time of suing out the writ of warrantia charts; or, if the tenant failed to vouch, or to sue out his warrantia charts before he was evicted, he was wholly without remedy upon his warranty. Bac. Abr. tit. Warranty, M.; a proof, that it had in no case the effect of a personal covenant. There is, however, one case mentioned in Coke Littleton, 102, b, in which the warrantor might be personally responsible in some form. But, if he was, it was on account of his wrong in voluntarily defeating the effect of his warranty, by alienating the lands which he had specially bound to warranty.'
In enforcing the covenant of warranty, the law was thoroughly settled, that the recovery should be of lands and tenements of the value of the lands warranted at the time of the warranty made, without regard to the increased value at the time of eviction, by the discovery of mines, buildings or other improvements, or by any accidental accessions, as in the case of the warranty of a wardship, and a new inheritance afterwards falling to the ward. Vin. Abr. tit. Voucher, T. 6, passim. And this benefit the warrantor had in all cases, unless he lost it by omitting to aver in his pleadings, that it was, when warranted, of less value than at the time of pleading; which was, (if he could have pleaded it and failed to do so,) an admission, that the value remained the same as at the time of the warranty. But, if he could not have pleaded the fact, the judgment was according to the value at the time of the warranty; as, if the voucher demands the lien and demurs upon the *144 cause shewn, and it is adjudged against him. Vin. Abr. tit. Voucher, U. 6; or, if the land becomes of greater value after entering into warranty; in both cases, the judgment was f°r the value at the time of the warranty made, because he was in no default, since he could not put the fact in issue. And so favorable was the law to this measure of compensation, that “if the vouchee enters into warranty, and takes by protestation the value of the land,” (at the time of the warranty made,) “the protestation shall serve him for the” (real) “value” (at the time of the warranty made,) “though the plea be found against him.” Co. Litt. 126, a. After the statute’s authorising the recovery of damages in real actions, upon a warrantia chartse, the warrantee having recovered a judgment pro loco et tempore, if he were evicted and damages were recovered against him to the value of the rents and profits, he might, upon a scire facias, enforce his judgment for lands Of equal value, and for the damages assessed against him for the rents and profits. Vin. Abr. Warr. Chartæ, pl. 5, N, pl. 1, N.; Ibid. Voucher L. 6, 4, pl. 5, N.; Ibid. Damages, P. pl. 12; without regard, I presume, to any sum which, he might recoup against the damages recovered on account of improvements put upon the estate by him. For, in all cases, the tenant was entitled to recoup the value of such improvements against the damages which might be recovered against him. But, if the value of the improvements exceeded the rents and profits, he had no remedy for the excess; for, it was his folly to expend in that way, more than the value of the rents and profits. Vin. Abr. Discount, A., pl. 3, 4, 9,10. Upon voucher, the recovery of the tenant against the vouchee, was to the same extent as to value and damages. Vin. Abr. Damages, R.,pl. 2, G. pl. 13; Ibid. Voucher, A., a, pl. 1 pl. 2. Indeed, the damages were given when the vouchee entered into warranty directly against him, he being, even in form, the defendant or tenant to the praecipe. The value of the land lost by the tenant, and of that recovered of *145 the warrantor, was fixed by ascertaining the issues beyond reprises. Reeves’s History of Common Law, vol. 1, p. 443. I should not have thought it necessary to add any thing to shew, that the value of the land warranted, as it was at the time of the warranty, was compensated in lands and tenements, according to their value at the time of the eviction, if it had not been suggested, that the lands and tenements recovered were valued also, according to their value at the time of the warranty, without regard to their increased or diminished value since. Such a rule would have been most uncertain and unjust. The warranted lands lost might have doubled in value, whilst those recovered might have lost half their value; or, those recovered might have increased, four-fold as much as those lost. Besides, an advowson was liable to be taken in value, the value of which must be perpetually fluctuating. Upon examining Rastall’s Entries, I find a great number of forms of the writ of habere facias seisinam ad valentiam, all of which direct the Sheriff to deliver lands of a certain annual value, as they are at present, and there is no form directing the Sheriff to ascertain the value, as it might have been at any time before.
Thus, it seems, that the utmost amount of the value .of the recovery which a purchaser could have against the vendor upon his warranty, was the value of the land at the time of the contract, and the damages for which he might be responsible to the successful demandant; and, that as to his improvements, he was entitled to recoup them against the damages for which he was responsible, to the amount of the damages; but, for the excess, if any, he had no remedy.
The case of an exchange may be supposed to be an exception to these rules; but, it is not every exchange implied in law a warranty, 4 Co. Rep. 221, by which the land given in exchange was specially bound to warranty, and also a condition, so that, if evicted in part or in whole, the party might enter into all the land given in exchange, for *146 the condition broken; or, if evicted in part, he might you^ or sue his warrantia chartse for a compensation in value, out of the lands given in exchange, to the amount 01^ va^ue °f that lost, upon the ordinary principles of recovery in value.
Thus stood the law in England when Virginia was settled, and is now our law, unless there be something in the circumstances of our country which makes it unfit for our situation, or unless our statute laws have abrogated it. There is nothing in our situation which ought'to vary the law, since that law is nothing more or less than the execution of the contract,-according to the terms agreed .upon by the parties; and I think, as I shall presently shew, that the common law, as to the measure of compensation in such cases, is founded on good reason, and conforms to the spirit of the same law in other cases. We have no statute which can be supposed to affect this question, except that of 1734, which, “for the more easy prosecution of real actions,” takes away ^all essoins, views and vouchers.” If this statute abolished the remedy by warrantia chartse as well as voucher, it would be equivalent to a prohibition of a contract of warranty, since all the remedies for enforcing such a contract would be taken away;, and a warranty, since that time, annexed to a freehold estate, would bp, to all intents and purposes, a personal covenant, on the same principle that it always was personal, when used in relation to a chattel interest or personal property. But what, in that case, would have been the fate of contracts previously made, in respect both to the remedy and the measure of compensation ? That remedy was not prohibited either by the terms or policy of the statute; the sole object of which was, to benefit the demandant in real actions, by making the proceedings more easy and simple, and by. avoiding delays, as appears from the whole context of the law. The Legislature could not have intended to take.away incidentally a beneficial remedy, which did not interfere with the policy of the statute. The warrantia *147 ¿harttie did not embarrass or delay the demandant in the prosecution of his right. If this remedy were abolished, irremediable injury might be done to the warrantee; for, upon a. personal covenant to warrant, no remedy could be had until the tenant was evicted. Cases may arise, in which, after conveyance, a fatal defect in the title may be discovered, and it may be many a year before the adverse title is, or can be asserted, (as, if it be a title in reversion or remainder,) and in the mean time the warrantor may waste his entire estate. Upon a personal covenant, no available remedy could be had in such case. But, a writ of warrantia chartss might be sued out immediately, and all the lands of the warrantor would be bound from the suing out of the writ, no matter into whose hands they after-wards went. The existence of this remedy was not inconsistent with the policy of the statute; and the abolition of voucher did not necessarily abolish the warrantia chartie, but, on the contrary, made it applicable to all cases of warranty. For, as by the common law, that remedy existed as a substitute for voucher, only in cases where voucher would not lie, because the tenant was not impleaded, or because the policy of the law prohibited voucher, for avoiding delay in particular cases; so, when our statute prohibited voucher in all eases upon the same principles, the loarrantia chartse remained as the substitute for voucher in all cases. Nor is there any thing in the situation of this country, which would render this remedy inconvenient, except that the issues of property here are not, as in England, a just criterion of its value; and that would justify a modification of the remedy, so far as to ascertain the value of the property warranted and of that recovered in value, by its gross value in money, instead of resorting to the profits as the standard; as, in the case of waste, although the general principles of the common law remain with us, yet their practical application is varied according to the circumstances of the country, so that what is waste in England, is not, therefore, of course, *148 waste here. Findlay v. Smith, &c., 6 Munf. 134. If, then, this remedy remained, a party warranting a free. hold must be considered as using the word in its proper an<^ technical meaning, and to bind himself no otherwise than such a contract bound at common law. I should, therefore, doubt, whether a personal action of covenant would now lie on a real warranty; except in the case of the recovery of a chattel interest against the purchaser, as to which the covenant would be personal. Vin. Abr. Covenant L. 7, pl. 1. But, on this point, I give no opinion; as, in this case, the covenant was, in its terms, both real and personal. If a covenant of warranty binds executors in terms, or embraces personal property with real, or stipulates not only to warrant, but also to “ defend;” in the two first cases, the terms of the contract are inconsistent with the effect of a real warranty, and, therefore, must have been intended as a personal covenant, r Ves. 516. In the last, the word “ warrant” would be construed technically, so as to bind the warrantor to compensate in lands or tenements of equal value, upon voucher, or warrantia chartse: The word “ defend” would be considered as making a personal covenant equivalent to a covenant for quiet enjoyment. Vin. Abr. Voucher B. pl. 6. But, these two covenants would have the same effect as to the amount of compensation, except that in one case it would be made in lands, and in the other in money. The object of both is the same; to ensure the perpetual use of the property, or, in ease of failure, to make a just compensation; and the damages arising from the breach of the contracts, would be identically the same; for, both would be broken at the same instant of time. If, upon principles of law and justice, the measure of compensation in the one case was the value at the time of the sale, so was it in the other ease. The pure warranty, the covenants of seisin, of power to convey, and for quiet enjoyment, having the very same object in view, that is, to ensure the perpetual enjoyment of the thing, or to make a just com *149 pensation, and, in the case of eviction, the damages to the purchaser being precisely the same; and falling upon him at the same time, and under the same circumstances, the compensation, in justice, ought to be to the same value, whether made in real or personal property.
But, admitting that warrantia chartse as well voucher were abolished by the statute, or that they are prohibited by any policy arising from the circumstances of the country, or that any other consideration justifies now the allowance of an action of covenant, or a warrantia chartse, at the election of the party, it would follow that the same measure of damages or compensation should be adopted, whether the action were in the one form or the other; for, precisely the same reasoning as to the intent of the parties, and as to the effect of a breach of the contract, would apply to both cases. Otherwise, the strange injustice would follow, if the old remedy was abolished, that the .mere substitution of a new remedy would vary the substantial rights of the parties; and the first recovery on the new remedy might, upon a contract in the same words, be three or four times the value of the last recovery on the old remedy. The Legislature, if they abolished the old remedy, or the Courts, if they abolished it, would, in effect, in such ease, malte a new and different contract for the parties; unless, upon the new remedy, the same compensation, in substance, were given; or, if both remedies existed, and the party had his election to pursue either, then, by the more authority of the Court by which this new remedy would be given, the party might recover twice, or even in some cases, ten or twenty times as much in value, upon the new remedy, as he could upon the old. This, indeed, would be to Legislate, and not to administer the law.
This view of the subject would probably not be doubted, unless upon the supposition, that the English law upon the subject of warranty, was founded in principles peculiar to the feudal system. Whatever influence those principles may have had in establishing the rule, that the com *150 pensation should be in kind, there was nothing in them which could influence the question as to the quantum of compensation. That was a question of mere justice and P°bcy; and it was decided strictly according to the general principles of justice and policy, which pervade the whole body of the English law. Whatever may he the extent of the obligations of natural law, no system of municipal law has ever enforced them, in all their consequences. The quiet and well-being of society require, that the.rights and responsibilities of individuals should in all cases, when it is practicable, without the hazard of extensive injustice, be ascertained by fixed and certain rules, so that they may adjust their differences, without a resort in each particular case, to the judicial tribunals. It is no objection to such general rules, that- in some few instances they will operate injustice. If their general effect is, to do right between the parties, it is better that individuals should suffer occasionally an injury, than the whole community an inconvenience. This principle is strongly asserted and insisted on by the common law. If, by the law of nature, every man was bound to make good all damages, which arose from his failure to perform his contract, even if aggravated by accidental events, which he could not foresee or control, (of which I doubt,) yet the common law condemns a claim to such aggravated damages, by the maxim, “ summum jus, summa injuria.” That law considers the state of things at the time of the contract, and holds the parties bound to compensate for all damages which are the natural consequences of the breach of the contract, and which the parties could reasonably be supposed to foresee, and have in their contemplation, and, therefore, to have contracted for. Vin. Abr. title Value; 4 Johns. 1, and the cases there cited; Vin. Abr. title Covenant, 4, 2, pl. 4: See 1 Domat’s Civil Law, 407. If such damages are aggravated by other accidental causes and circumstances, not necessarily connected with the violation of the contract by the party, and which could not *151 reasonably be anticipated by the parties, they cannot be considered as having contracted in relation to such circumstances; and the damages to the party injured, arise not solely from the breach of contract, but, in part, from other causes, over which the party has no control. For, although without the breaeh of contract, these aggravated, damages would not have arisen, yet, without the existence of those circumstances, the breach of contract would not have produced such aggravated damages; so that both cauges combined to produce the damage. If either had been absent, the aggravated damages would not have occurred; and, in justice, the party failing in his contract, is only responsible for the proportion of the damages of which he is the cause. The failure to pay punctually a debt, may be one cause of the failure and ruin of a merchant; but, the circumstances in which he was placed at the time, were another, and a necessary cause of his failure. Yet, as in general, the debtor cannot be presumed to know those circumstances, he is not responsible for the mischief arising from them; although, without his failure in his contract, these circumstances would not have had such effect, and this even if he was apprised of those circumstances, and knew the consequence of his failure. He would be bound by the general rule of law to pay interest for his delay, and the other party would bear the-particular injury to hint self, rather than the whole community should suffer a particular inconvenience, by abandoning a beneficial rule of law.
The cases of contracts for the delivery of stipulated quantities of personal property, which notoriously fluctuates in the market value, at a future period, and upon the breach of which the party is responsible for the value, at the time of his failure, have no application to the question under consideration. For there, from the nature of the contract, it is certain this fluctuation was in the contemplation of the parties, and that they intended to take the hazard of a rise or fall in the price. This consideration would influence the terms of the contract; and the vendor *152 would, in fact, get a compensation for the hazard which ¡-,e took upon himself. As to the measure of compensation, I can see no reason for a difference between an executed and an executory contract, except so far as from the nature of the contract, it appears what the parties stipulated for, or had in their contemplation, in the event of a failure to perform the contract. It was upon such reasoning as this, I presume, that the measure of compensation, in case of a warranty, was fixed at common law; for, upon the same reasoning, in all other cases, the law prohibits the recovery of speculative damages. Thus, on covenants to convey to another, at a future time, a tract of land, for a given price, and, before the time for performing the contract, the estate increases in value, but it is feared that the vendor has not a clear title; the purchaser can only recover the money paid, and interest; for, this is his real loss, and all the rest is speculative. Flureau v. Thornhill, 2 W. Black. 1078. In such a case, his loss is in fact the same, in respect to the increased value, as if the estate had been conveyed at the time of the contract, and he had been evicted at the time appointed for the execution of the contract.
To apply these principles to the case at bar. Upon a contract for the sale of land, all the facts known to the parties, as to its" present and probable future value, enter into the consideration of the price. If any accidental circumstances, not foreseen, should enhance the value, that could not have enhanced the price, and the purchaser cannot be properly said to have purchased the advantage arising from such circumstances, or the vendor to have sold and •warranted it; and in case of eviction, it cannot be said that his loss, as to the increased price, arose solely from the failure of the vendor. For, without these circumstances, that increased value would never have existed. The loss of his purchase money, and of the rents and profits for which he is responsible to the true owner, is all the loss which necessarily resulted from the violation of the con *153 tract, or failure of the title. As to improvements made by the purchaser, in general the vendor cannot foresee that such- improvements will be made, beyond what is necessary for reaping the profits of the property; and if so, such improvements could not, in general, exceed, or even be equal to the rents and profits. And to that extent the purchaser would not lose them, as they would be set-off against the rents and profits for which he may be responsible. If they exceeded that measure and the vendor was responsible, then the contract, in effect, would amount to an agreement that the responsibility of the vendor should he graduated by the whim, or folly, or pleasure of the purchaser. In the case under consideration, the sale was made when we had a sound circulating medium. The eviction happened, when peculiar and accidental circumstances, affecting the community at large, had rendered fhe price of every thing literally speculative; and it is probable that the land now, is of no more value than at the time of the purchase, unless valuable improvements have been made upon it. If such were made by the purchaser,, they were made in his own wrong, and with the full knowledge of the adverse claim. If the vendor were responsible for the increased value, he would be liable in consequence of accidental circumstances which were unforeseen, did not influence the price, were not in the contemplation of the parties, and over which he had no control. And the extent of his responsibility would depend upon the accident, whether the owner asserted his claim sooner or later, and whether the suit was speedily disposed of, or long protracted. A rule, the effect of which depends upon so many accidents, cannot he either just, or founded upon any good policy. I agree with Chancellor Taylor, in Lowther v. The Commonwealth, 1 Hen. & Munf. 202, ¡hat the warranty extends, only to what is sold and paid for, and not to those accidental and fluctuating advantages, arising out of circumstances which continually change, and which may enhance the value to-day, and depress it in an *154 equal degree to-morrow; nor upon the act of the purchaser himself, in making improvements for which the vendor received no consideration. And that idea is strongly countenanced by the form of the plea of the voucher, where buildings have been erected “he should shew the special matter, and enter into warranty for so much as was at the time of making the deed, and not for the residue:” Godb. Ballet v. Ballet.
The result is, that the measure of damages is, and ought to be the same, in case of eviction, whether they be claimed in an action upon a warranty, or covenant of seisin, or of power to convey, or for quiet enjoyment; that this measure was settled by the common law, upon principles of justice and sound policy, to be the value at the time of the contract, without regard to the increased or diminished value, or to improvements; and the rents and profits, for which the tenant is responsible to the successful owner; that as to any rents and profits, for which he may not be so responsible, the vendor would not be responsible, since the purchaser would have enjoyed them by virtue of his contract; and as to his improvements, if reasonable, they will be discounted against the rents and profits; if not, the - vendor should not be responsible for them, and so the vendor cannot, in any case, be responsible for improvements; and that, with us, the value ought to be ascertained, (owing to the circumstances of our country,) not by the English rule, according to the issues beyond reprises, but according to the value in gross, the best standard of which is, in general, the price agreed upon by the parties, at the time of the sale. And, that when it does not otherwise appear what was the value of the rents and profits recovered from the purchaser, or for which he may be responsible, interest upon the purchase money from the time that such responsibility for rents and profits existed, should be given in lieu of the rents and profits. In this case, such responsibility commenced upon the original entry of the appellee into the land, and the rents and profits are not as- *155 curtained. But, as the purchaser never enjoyed the land for any time, by virtue of the deed, he should have interest on the purchase money from the time he paid it.
These views apply only to cases of sales made bona fide, and to a remedy by an action founded on the contract.
The case of a fraudulent vendor would be subject to other considerations, in an action on the case in the nature of a writ of deceit.
The judgment should, therefore, be reversed, and judgment rendered for $> 800, with interest at 6 per centum, per annum, from September 22nd, 180Í), and costs, subject to the credit admitted by the parties.
Judge Coalter.
The first objection is, that no action of covenant lies on the warranty, the remedy being by warrantia charlee, or by suit in Chancery, or action on the case to recover the money paid, the consideration having failed.
I have not had it in my power, not having access to the necessary authorities, to investigate fully, this ancient and obsolete doctrine of loarrantia chartse.
In Colee Littleton, 365, note 1, by the editor, I find She origin of this doctrine stated. It is there said, that according to the civil law, the purchaser may call on the seller to warrant, who was substituted as defendant, and the purchaser might leave the defence to him, or defend with him, or if evicted, he had a claim upon the warrantor for complete indemnification. The precise sum is sometimes agreed on by the parties in their contract; but pen* alties of this kind are not encouraged, and it is in the breast of the Judge to moderate or increase the sum; but it cannot be increased, either by express contract or by equity, to more than double the property evicted. The warranty-in England, it is said, is of feudal extraction, being derived from the obligation the Lord was under to defend the tenant’s title to the land, and if evicted, he was bound to *156 make him recompense, by giving him lands of equal val~ ue to those evicted.
In Hobart, 22, it is laid down, that warrantia chartse wiM he upon all actions real, and may be brought either before or hanging those actions, though voucher only lies in the actions; and this, though he may vouch in the action that is brought against him; and if he recover, or after-wards lose in the action wherein he voucheth, he shall have a writ of habere facias ad valentiam within the year after recovery in warrantia chartse, though he cannot have execution until he take loss. And this is the safest course, because he shall bind the land from the teste of the warrantia chartse; whereas, in the other case, it is only bound from the time of the voucher; and it is also there laid down, that though he bring warrantia chartse, he must not rely on that alone, but must also vouch, and request plea according to his case.
If this covenant was in the form of a pure warranty, I doubt whether warrantia chartse lies in this State since 1734, when voucher was done away by our statute, 4 Hen. Stat. at Larg. 403; and if I am wrong in this, yet since that statute, and considering the entire disuse of that ancient remedy, its incompatibility with the situation of this country, and the forms and manner of conveyancing here, I am persuaded that no one, at this day, considers that the use of a set of words, differing but very slightly from another set, will entirely alter the nature of the liability of the vendor, on the one hand, or of the rights of the purchaser on the other, in case the covenant to warrant is broken; and that the general sense of the country,' and sound principles of justice, therefore, require, that all covenants of this kind, however worded, should be considered, as to the remedy in case of eviction, as personal covenants by the vendor; that is, that a personal action of covenant will lie on such warranty.
But, if I am in an error as to this, the warranty here is not in the usual form of a pure warranty, but it is a cove *157 nant, “ that ho will warrant, and forever defend, against all persons, and all claims whatever, and that he has full power and authority to convey, clear of incumbrances.” Now, the verdict finds, that there was a claim, against which he could not, and did not defend, although it is true he conveyed the legal title to the plaintiff, the adverse claim being of an equitable nature.
This, too, is a bargain between two citizens of Virginia, for a sale of lands in Ohio. A warrantia chartse, voucher, &c., I presume, could not lie between these parties in Virginia, on a sale of lands in Ohio; and there is no proof that it would in Ohio, even if they lived there, or that such remedy exists there. Besides, how could a citizen of Virginia he vouched there ? And, if he is not warned, though the tenant may lose the land, he cannot recover in value against tire vouchee. 2 Sound. 32. And, what has also great weight with me, is this: A personal action of covenant may be brought on a real covenant of warranty, where the party, neither by voucher, nor warrantia chartse, can have recompense; as, where the disturbance or eviction is by a lease for years. 2 Brownl. 158; Hob. 28. There must be a suit against him, and an eviction at law, at least of an estate for life. Now, if he could neither vouch, nor bring warrantia char tie in this State, of lands lying in Ohio, both parties living here, then the personal action lies. But, again; if the lands lay here, the eviction is not by a suit at law, but bill in Chancery; and, I have seen no case, nor do I believe any can be found, of voucher in such suit, or of an execution ad vatentiam on a warrantia chartse, where the recovery of the land has been by bill in equity. It was then a mere personal covenant, or must be treated as such, as much as if it had been a lease for years, or, as in the cases referred to, where the only remedy was by personal action.
The next question, which relates to the proper measure of damages, is a very important one, and has never been directly decided, that I can discover, in this State.
*158 But, it is said, that however this point may be, in gene-raj} here the defendant, though he had the legal title, and made a deed to the plaintiff, yet nothing passed by the deed, as another was in possession; and the possession was afterwards wrongfully acquired by the plaintiff, as the covenant was broken the moment the deed was executed; and, therefore, he is only entitled to the purchase money, with interest. I confess, Í do not clearly perceive the force of this argument, even admitting this statement of the case; or, how it is, that a man who conveys, and covenants that he has a good right to do so, can urge, in extenuation of damages, that his conveyance operated nothing, and that he had no right to convey, although he expressly covenants that he had. And, though the purchaser may have had such notice of this equity, as to postpone his legal title to the claim of him holding that equity, yet the appellant must be presumed to have assured him, that there was no valid outstanding claim, as his warranty and covenant, that he has a good right to sell, clearly indicates. He, therefore, cannot shelter himself under an alledged improper purchase, by the appellee. He is estopped to say, that his deed passed nothing. If he could be urged in any way, it ought to have been pleaded as a foul contract between both parties, that both were guilty of champerty and maintenance, and that, therefore, no action at all lay on the deed. Nor, can the appellant, as it appears to me, urge that Jackson, the appellee, did wrong in getting possession. He did no wrong to him which he could sue for, or set-off in this action; and, if he did wrong to others, that demerit in him gives no merit to the appellant.
But, how stands the fact ? From the verdict, and the facts agreed, it appears, that one Martin held the legal title; that the appellant, Stout, as early as 1805, and long before he got a deed from Martin, sold the land to one Hollenback; but, whether he had then purchased, or paid Martin for it, does not appear. Hollenback sold to one *159 Claypole, who took possession. After this, Claypole surrendered the possession to Martin, who held the legal title, and claimed the land, (probably not having received the purchase money,) without the knowledge of Hollcnback. Now, I apprehend, that the lawful owner, getting thus into possession of his own land, could not be guilty of wrong, either in Ohio or Virginia. It appears, however, that after this, Claypole, who was probably left in possession by Martin, (though that is not expressly stated,) without the knowledge or consent of Martin, delivered possession again to Hollenback, and took a lease from him.
In this situation, Martin, ignorant of these transactions, conveyed to Stout, on the 22d of September, 1809, believing himself in possession, by his tenant, and Stout, on the same day, to Jackson. We know not what the law of Ohio, on this subject of possession by Claypole, is; if is not found, lkit, it is believed, that the law of no civilized society, w'ould declare such a deed void, so as to prevent the title from passing. This is not a case of defect of title at law. The legal title passed, but there was an outstanding equity; and, if there is a distinction between a warranty of seisin and a warranty for quiet enjoyment, (which, I confess, I am not casuist enough clearly to perceive,) this is a case in which the legal title passed, and the party could not sue for a breach of covenant, until " ousted by reason of this outstanding equitable title.
, What, then, did Jackson do ? Being the lawful owner, he went on the land, as every lawful owner has a right to do, and, by peaceable means, acquired the possession. From this, he has been removed, in the year 1813, by a decree of the Supreme Court of Ohio.
The verdict finds damages for the plaintiff, according to the value of the land and improvements, at the time of eviction, to the amount of $2,937 50 cents, with interest from that time, in case that ought to he the standard of damages; and $800 with interest from 1809, if the purchase money is the proper standard; which question is *160 submitted to the Court. If the law of Ohio ought to goyern the case, and would operate in favor of the appellant, it has not been found; and whether the increased price or va-lue arose from the general rise of lands in Ohio in the year 1813, or from large improvements made by the appellee, if this last circumstance ought to vary the case, is not found. It appears from the verdict, that Jackson leased the land to Claypole, and it not being found that he removed to it himself, the probability is, that large improvements had not been made. I see nothing, therefore, which will enable me to view this case otherwise than as the law would stand between two citizens of Virginia, on a sale and eviction of lands in Virginia, where, between the time of sale and eviction, lands, from general causes, have appreciated in value, and which lands may also have been rendered somewhat more valuable by such improve-ments as a tenant, in the course of three or four years, might be supposed to make. In other words, and as a general proposition applicable to all cases of this kind, is the purchase money with interest, or the value at the time of eviction, to be the standard ?
My present opinion is, that the latter is to be the stan- ' dard. It is true, that if the loss has been greatly increased by a large expenditure of money beyond what a prudent and just man' ought to make, according to the circumstances of the case, there might be some difficulty in doing exact justice to both parties. Indeed, it must be admitted, that whichever standard is adopted, entire justice will not always be attained. Nothing is found in this case, and I must presume, therefore, that nothing exists, to vary it from the general proposition above stated.
This question has been differently settled in different States. If I err, therefore, I have the consolation of being supported by those, who, under a similar state of things, have thought as I do; and as the law in this State will not be settled in this case, I will have an opportunity to abandon my present opinion, if, with better lights, I shall see *161 cause to do so, whenever this important question shall again come on before a full Court.
This is an action of covenant; concerning which, it has been well observed, “ that as the good of society requires a punctual performance, and that no person should be allowed to rescind or break through his contracts, so the law has provided a remedy, by action of covenant, in which the injured party is to recover damages for the violation of the contract, in proportion to the loss he has sustained.” Bac. Abr. tit. Covenant; 3 Black. Com. 157.
In this action, then, the general question is, what loss has the party really sustained?
But, we are told, that this is an action of covenant on the sale of real estate in fee simple, and that it is brought on the deed of conveyance itself, and that whatever may be the law of this action of covenant generally, as to sales of personal property, or in other cases, such as leases for years, &e., and the loss really sustained in such cases, by reason of the breach of such covenants, yet, as anciently a party to whom lands had been conveyed in fee, might bring his warrantia chartse, we must see what he could have recovered in that action; and although that action has been out of use for a century, and the covenant, at least as regards this deed, is a mere personal one in this respect, yet the remedy is to be varied and the damages assessed, according to the nature of the recovery, in that obsolete action. This will be proper, if that remedy, founded on ancient feudal doctrines which hare long since passed away, and which never existed here, gives a proper and • just rule in regard to those who contract for a personal covenant and for a just remuneration, according to the principles consequent on such an undertaking; otherwise, not.
I cannot, at present, bring my mind to acquiesce in the doctrine, that it does give the correct rule. That remedy had its own law, founded on feudal and obsolete reasons. It gave nothing, for instance, when the vouchee had no *162 lands, however wealthy in other respects. If the lands, t00f recovered on voucher, were afterwards evicted, so that: in reality, there was no satisfaction, the remedy was at an end, &c.
All these doctrines, doubtless, suited the feudal times. But, suppose a man sells lands, receives the purchase money, and puts the purchaser into possession, under a covenant to convey, and before conveyance, there is an eviction by title paramount; no warrantia chartse lay in such case, there would be then no such standard to compare by; and what then would give the rule ?
But, I am not fully satisfied, that, testing the question by the nature of the recovery in this ancient action, except as to increased value, by reason of improvements, I should not be supported thereby. If the warrantor, on •being vouched, enters into warranty, generally, that is, makes defence, without saying any thing more, he will be held to warrant, according to the then value; but, if the estate is more valuable, by reason of improvements, there he can plead that matter. If, however, this is not the case: I have seen no case which goes to shew, that he can alledge that, from general causes, the land has become .more valuable, and that for that cause, he is not bound to enter into a general warranty. I believe no such case can be produced; but, on the contrary, that, by analogy to cases I shall produce, he could not.
To simplify my ideas, on this subject, I will suppose, that A. has thirty acres of land, unimproved, each acre of equal value, say @100; and sells ten of them to B. for @ 1,000. They all remain unimproved, until B. is evicted; at which time, from general causes, they have appreciated in value, and are then worth @ 200 each acre. Will B. get only five acres of the twenty adjoining, and yet held by A., or ten acres ? If the latter, as I apprehend he would, then he gets land worth @ 2,000 at the time of eviction, though he gave but @ 1,000 for that evicted.
*163 Hut, suppose, from a counter current in human affairs, the lands were worth only $ 50 per acre, at the time of eviction: would he get the remaining twenty acres, worth only the $> 1,000, or only ten acres, worth as much as the ten he lost ? I apprehend the latter.
Assignment of dower is a warranty in law, and so is an exchange or partition of lands. 2 Saund. 38, b, note 5; Co. Litt. 384, b. If a widow is sued, she may vouch; and, if she is evicted of her dower, she will. recover one-third of the remaining two-thirds. In every exchange, lawfully made, this word excambium importeth a warranty, and also a condition. 4 Co. Rep. 121, Bustard’s Case. The latter gives re-entry, and the other voucher and recompense; and this in respect of the reciprocal consideration, one land being given in exchange for the other; hut, it is a special warranty on the vouchee, and, therefore, the voucher shall not recover other lands In value; and the; same law is in case of partition. Hence, it follows, that if three acres are given for three acres, and one is evicted, the condition is entirely broken, and the person evict,ed may re-enter for the whole; but, if he vouches, he shall recover in value but according to the loss. In partition, however, if each parcener has three acres of equal value, and one is evicted of one acre, having-prayed in aid the other, she will only get half an acre, so as to make all equal. So, if three acres of equal value descend, and the heir endows the widow of one, and she is impleaded, and vouch, and is evicted, she will recover only the third part of the two acres. I3ut, in case of exchange, each party is a several purchaser, and each-warrants the whole to the other; and, therefore, he shall recover to the value of what is lost.
Let me ask, whether it would have been tolerated in either of these cases, for the vouchee, or the parcener, who was prayed in aid, to say, ££true, you are impleaded, and may he evicted; it is also true, that your lands have appreciated, from general causes, as well as mine; but, if you *164 are evicted, I insist, that your lands shall be valued at the time that the exchange or partition was made, or the dower assigned; and that I shall compensate you out of the lands I hold, at their present value. They are now worth double what they were then; and though you gave me three acres for the three you may be evicted of, and which are now of equal value with the three I hold, yet, I will compensate you for the loss of the three I gave you in exchange, by one half of what you gave me ?” Would the dowress, and parcener evicted, also receive their satisfaction in the same way ?
But, the party, in the case of exchange, could re-enter for the whole, and this by the same law which, by the other remedy, it must be contended, would only give him one-half.
I incline to think, therefore, that the vouchee must enter into a general warranty, unless when he can plead, that the lands sued for have been increased in value by improvements.
But, the case cited from Johnson’s New York Reports, admits, that in an action of covenant, there can be no difference as to increased value, whether arising from general causes, or improvements. If the law of warrantia chartse, however, was different from what I suppose (concerning which, I shall not further dispute,) it might have been justice in feudal times; but, it was not the kind of justice dispensed by the civil law, which, I think, affords a standard better adapted to our times, and to the office of an action of covenant, as by it, complete indemnification was given; and ought not, therefore, to influence us in the decision of what is the proper standard of indemnification, in that action. Such a standard as that insisted on, I believe, has never been in the contemplation of parties contracting in this State; and, I think, I am justified in this belief, by the opinions (though they may be called obiter,) of the Judges of this Court.
*165 In Mills v. Bell, 3 Call, 320, which Was on a bill for a specific execution and conveyance of land, a part of which had been recovered from the purchaser, Judge Pendeeton, speaking for the whole Court, says: “The first point which presents itself to the consideration of the Court is, by what ratio the compensation to be made to Mills, for the land evicted, is to be adjusted ? Whether the value of them, at the time of eviction, or at the time the purchase was made ? The former would have been the rule, if a conveyance had been made warranty; since the purchaser is entitled, on the covenant, to the increased value of the estate, as well as for any improvements he may have made on it. But where, as in this ease, the contract is executory, a Court of Equity will adjust it, upon principles of equity, according to the circumstances; and, since Mills appears to have been faulty in his payments, which, if regularly made, might have prevented the loss, it ought to be adjusted, by proportioning the loss to the value of the whole purchase money for the whole land.”
No case of an action of covenant, on a warranty in a deed, in which this question has been made, has ever come before this Court, that I am aware of; not, I presume, because no such case has occurred, (for, I am told, they frequently do,) but, because the universal understanding, and justice of the country, has sanctioned the above opinion.
The same doctrine is laid down by Judge Roane, in the case of Humphreys v. M’Clanachan, 1 Munf. 500, as settled in the case of Mills v. Bell. But, this was an executory agreement, as in the case of Mills v. Bell, and the value settled on equitable principles, according to the circumstances of the case.
So in the case of Nelson v. Matthews, 2 Hen. & Munf. 177, Judge Tuckek lays down the same general doctrine, admitted to be law in Mills v. Bell. But this was a case, not of eviction, but of a deficiency in the land; so that there being no land lost, which could be seen and valued, the average price per acre of the whole, was the only standard that could be resorted to.
*166 Since the argument, I have been referred to Crenshaw v. Smith & Co., 5 Munf. 415. I have examined the original record in that case and my note of the argument, and find the report of it is not as full as could be wished.
The case turned on a title bond, set out in the amended cross-bill, which is not noticed in the report. The principal tract of land, which was the great, if not the sole object of the purchase, was conveyed by deed, with general warranty; the consideration expressed being £300, the whole purchase money stipulated for, as far as appeared in the cause. But the title bond extended, also, to lands adjoining, some of them, and possibly all, standing on inchoate rights. From this circumstance;—the peculiar phraseology of the bond as to these adjoining lands;—and from the will of Crenshato directing this debt to be paid;— there was much reason to doubt, whether Roberts sold any thing more than his rights in this land, and it was of a part of this land that the alledged eviction had been. The case, then, was placed by the argument, on the ground, that the bill was to be considered in the nature of a bill for a specific execution, and as it appeared that the party could not convey the 100 acres, compensation ought to be made.
In this view, the case was one like Mills v. Bell, with this difference, that in this case there were doubts as to the propriety of any compensation at all.
The question now before the Court, was neither made in the argument, nor was it considered by the Court. The present, I believe, is the first case, in which that question has directly come before the Court.
I should not be governed by the dicta of the Judges in the above cases, if I saw good reasons to depart from them; but I do not. I cannot say, when a jury is called on to estimate what was the value, at a given day, of a particular tract of land, which a party has lost, and of course has lost something of that value, and has sustained damage to that amount, that an estimate of such value and loss can *167 be considered a mere speculative estimate of damage, so as to come under the doctrines on that subject. I do not understand, that either the civilians or our Judges have considered that the real damage which a man has sustained in such a case, cannot, with sufficient certainty, be ascertained.
Suppose a part is evicted, which cuts off the only spring attached to the dwelling, and the most valuable part of the land and improvements, both absolutely necessary to the enjoyment of the residue, either for the purposes of comfort or profit. Is the average price to give the rule, or must not the intrinsic value of the land lost, added to its relative value to the residue of the tract, give it ? And how can wo carry this back to the date of the contract? The parties never fixed a value on the land, thus disjointed and cut to pieces. It cannot he said, this or that is the value they fixed to it in that situation. The jury must first speculate on what it is probable the purchaser would have valued it at, and whether he would or would not have purchased, tmder such circumstances, and then say that this Was what he had agreed to give for it, before it can be said that this was the value fixed by the parties. This, I think, would be like speculative compensation, rather than fixing real damage. But, if the jury in this ease, ought to fix the actual loss, by taking into consideration, not only the intrinsic value at the time of eviction, but its relative value also, (and I cannot see how, in justice, they could do otherwise; indeed, the Judges in Nelsonv. Mai thews, all concurred in opinion, that in such a case as I have supposed, the actual as well as relative value is to give the rule,) they may fix the value beyond the original purchase money of the whole; so that the plaintiff in this case, might possibly recover more for a part, than he would, had he been evicted of the whole, and the purchase money, the supposed value agreed on, had given the standard. We cannot combine the estimate of the value in such case, with the purchase money. All will then be doubt and *168 speculative opinion. We must go for the average price g¡vell; or for ^e real loss. I think the latter.
But, suppose the purchase is of a house and forty feet *n a town> n°t producing one cent of profit, except from the buildings, which have been consumed by fire before the eviction. Is the seller to make good this loss to the purchaser, by returning the whole purchase money and interest, not even having credit for the rents, or to pay only the value of the naked lot, which was all that the purchaser lost by the eviction, leaving him to stand his own insurer against accidents of this kind, or any other depreciation in value at the time of eviction ? What does the purchaser lose ? The property of a given value at the time of eviction, at which time the covenant is broken and action accrues.
Again; A. sells to B. 40 feet of ground in the Main street of Richmond, valuable only as a building lot, and sold as such. . To make it avail any thing to the purchaser, he erects buildings, and is evicted. Has he only lost his purchase money and interest? Or, has he lost what the lot, with the buildings, would have sold for, the day after eviction ? Certainly the last; and the only question then is, whether that is the real damage he has sustained in consequence of the bad title, and breach of contract on the part of the defendant? Could there be any doubt of his right to recover that, especially, if as in this case, such loss had not arisen from a paramount title, unknown to the defendant, but in consequence of a previous sale made by him ? I think that would be the only safe and just measure of the injury in either case; but surely there could be no doubt in the latter. The vendor could not say, you ought to have waited for 20, 30 or 50 years, so as to be sure there was no adverse claim, before you occupied the property, in the only way you could occupy it, so as to make it of the value of one dollar to you.
It will not do to say, that such risque to vendors will put an end to the sale of real estates. If they do not wish *169 to encounter such risque, they can make a special warranty to return the purchase money only, or pro rata for the quantity evicted, and get a price in proportion; they are not to warrant a good title, get a full price, and then say they are not to make good the actual loss which the vendee sustains.
What would be the proper estimate in case the purchaser, after notice of an adverse claim, goes on to make valuable improvements, or without such notice, lays out sums which no prudent man ought to expend, it is not necessary for me to speculate about. Extreme suppositions, out of the usual and fair course of human transactions, are not to vary the plain principles of justice, applicable to ordinary occurrences.
It would not be tolerated, for the vendee to prove, that at the time of the purchase, he could, with the same money, have purchased another tract of land, then offered to him, and which, even at the time of eviction, was worth so much; or, to say, that, if he had not been evicted, he would, at the time of the trial, and when he gets compensation, have sold it for so much.
These would be considered unjustifiable speculations, however clearly proved, and non constat, that he would have done either the one or the other. But, all will admit, that he lost property of a given value, at the time of eviction, and that he has, therefore, actually sustained damage to that amount, by the failure of the vendor to warrant and defend against the adverse claim, as he covenanted to do. To decide, that he shall not make good that loss, it has been very aptly said by the counsel, would be to annul, instead of enforcing the contract.
It appears to me, that the original price or value has nothing to do with the question; and, that much of the error in the arguments I have seen, arises from the supposition, that if a sum of money was given, that sum, at least, with interest, must be recovered. It is true, that the price may sometimes forma correct guide; as, when the purcha *170 ser, before entry, discovers a paramount title, and sues on wjiat is denominated the warranty of title or seisin; and thus, before there is any material change in the property, or ^as sustained any loss, except parting with his money, brings his action. In such cases, the jury would give him at least his purchase money, and interest. But, where he has been put in possession, has made improvements, or has permitted improvements to dilapidate, or, from any cause, the lands are more or less valuable, his loss, by the eviction, is not his purchase money that he parted with on the sale. His loss is the real value of the property at the time of eviction. If he has been obliged to pay mesne profits, it is because he has received them; so, he has nothing to complain of on that score; and, therefore, I cannot see, according to the doctrines contended for, on what principle it is, that he is to get interest on his purchase money, except it be on the principle of annulling the contract, and restoring the party, as far as may be, to his former situation. But, can you do this at law ? And, if you can, will it be justice to do it, without giving him his improvements ? Suppose A. purchases of B. and is put in possession, and makes improvements; but, before he has paid all his purchase money, he finds B. cannot make him a title to a most valuable part of the land, near the improvements, and he applies to a Court of Equity to rescind the agreement. Is he to lose his improvements, which were made on the faith of a good title ? It will not do to reply, that, in that case, the vendor gets the improvements, and ought to pay for them; for, it is the same to the' vendee, whether he gets them, or another. His loss would have been the same, had they been erected on the part of the land evicted. Whether the vendor, or a stranger gets them, the damage is the same to him.
But, a Court of Common Law does not rescind; it enforces agreements; and, by an action of covenant, makes full compensation for the actual loss sustained by their violation.
*171 The purcha.se money, or value at the time of the sale, .may, or may not, be properly resorted to, according to circumstances, as affording a criterion of the loss sustained by the eviction; but, in my opinion, it will rarely give the just rule, because, the injury sustained must be adjudged of at the time the covenant is broken, and at which time action accrues. In this case, it was sustained at the time the appellee lost his land by the decree, and not before. He could not have sued his covenant before that time. He then lost his land, worth what the verdict finds; and, I am obliged, therefore, to affirm the judgment.
Judge Brooke,
The question that has been so elaborately discussed, is one of great importance; and, it is to be regretted that, there being but a bare Court, it is not to be finally settled in this case. No case has been shewn, in which an action of covenant has been sustained upon a technical warranty at the common law; and, if this were a warranty, in its strict sense, of lands lying in Virginia, it might be insisted, that this action would not lie. But, as the lands warranted, lie in another State, the laws of which are not found in the verdict, it may he inferred, that the parties used the term warrant, in the deed, in its vulgar, and not in its technical sense; and, that the action of covenant, upon general principles, was the proper action in this case. The covenant consists of two parts. First; a warranty of the title; and, secondly, that the grantor had power and authority to convey. It will he perceived, however, that the plaintiff has not, in alledging a breach of the covenant, treated it in any other light than as a covenant of seisin, at the time the deed was executed. Considering it as a warranty at the common law, great diversity of opinion has existed, as to what was the substantial recovery upon a warranty of that character; and, it is supposed, that, in an action of covenant, equivalent damages ought to be recovered. The *172 warranty in a deed was introduced at a very early period 0f English tenures. Its object was, in case of eviction of the title warranted, to secure to the warrantee lands of eclua^ value to the lands from which he was evicted; and the diversity of opinion has been, on the question whether of equal value at the time the warranty was entered into, or at the time of the eviction of the warranty. The pleadings are said to be the best evidence of the law, and I think will settle the point in controversy. If a party was sued in an action in which he might vouch the warrantor, the latter was at liberty to plead the actifal value of the land warranted at the time the deed was executed, and the voucher recovered other lands of that value only. If he failed to plead, a jury was empannelled, to enquire into the value, at the time of the warranty, and the recovery over was of lands of that value, and no more. This seems to have been the settled law, from the time of Edward 3d down to James 1st. Year Book, 3 Ed. 3, 14 B. So also laid down in Fitzherbert; Brooks and RolFs Abridgement. Covenants of seisin against eviction, and for quiet enjoyment, were introduced into deeds long after warranties, not for the purpose of greater indemnification, but to supply some defects in the warranty of another description. The warranty gave no remedy against the personal estate of the warrantor. It lay only against himself, or his heirs. If there were no lands in the seisin of the warrantor, when the writ was issued in the suit in which he was vouched, there could be no recovery over against him. So, also, if none, when the writ of warrant ia chartse issued, the warranty was unavailing. F. N. B. 222. These were obvious objections to a sole reliance on a warranty, when personal property had become of more consideration than at the time warranties were alone resorted to for indemnification, in case of eviction by superior title. Upon a covenant of seisin, the party is to be indemnified for the money paid; perhaps with interest. It is so expounded by the English law. Upon covenants *173 against eviction, the rule is the same; and, upon general principles, it ought to be so. Neither improvements or increased value of the lan'd, is in the contemplation of the parties, nor is diminished value considered by them. The land, and the price given, are the subjects of the contract. Any thing more would be speculative matter; as to which, value could not be so fixed as to bear any reasonable proportion to the matters in the contemplation of the parties at the time. The rule of the civil law differs from the common law rule, (which delights in certainty,) and is said by some writers to be a very arbitrary rule. It is admitted, not to apply to extreme cases, and is, of course, very unsettled. By that rule, it is admitted, that damages are recovered for improvements, and other incidental changes in value. Speculative damages have been uniformly discountenanced by the decisions of this Court. In the few cases that have been before it, in which the doctrine of warranty has been glanced at, (without a thorough investigation of it,) it has been supposed by the Judges to be a hard doctrine; and the cases have been decided upon what, I am of opinion, is the correct standard of value, in exclusion of speculative damages. But, whatever may be the true standard of value, dcducible from any analogy to the recovery over upon a warranty at the common law, it would not apply to this case. The appellee, Jackson, never was in possession of the land, under his title from the appellant. He came into possession under another title, as appears by the verdict, with full knowledge that it was a better title than the one under which he claimed. His action of covenant, upon the warranty, accrued before he entered upon the land in question; and, he cannot be entitled, by his own act, to larger damages than the then breach of covenant gave him. In effect, there being no good title in the appellant, when he conveyed, and no possession in the appellee, under the conveyance, the covenant was broken, in limine, and gave the appellee an action, substantially upon a covenant of seisin. The alledged breach of the covenant, in the declaration, gave it that cha *174 racier also. It negatives the power and authority of the appellant to convey the title, as a part of the breach of his covenant-to warrant; and the finding of the jury supports allegation. On this ground, therefore, whatever may be my opinion, upon a more thorough investigation of the doctrine of warranty, I am of opinion, the judgment in this case must be for the lesser damages found by the jury.

Judge Cabell, absent from indisposition.